# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re: NAVISTAR DIESEL ENGINE** | ) | **Case No. 11-cv-2496** |
| **PRODUCTS LIABILITY** | ) | **MDL No. 2223** |
| **LITIGATION** | ) | |

**This Document Relates to: All Cases**

---

## STIPULATION AND AGREEMENT OF SETTLEMENT

---

This Settlement Agreement is entered into this 1st day of November, 2012 by and among the named plaintiffs: (1) Custom Underground, Inc.; (2) John Barrett; (3) Scott and Heather Gray; (4) Frank Brown Towing, Inc.; (5) Cecil and Tressie Fulton; (6) Karl Strong; (7) Dinonno Enterprises, Inc., d/b/a Cutting Edge Concrete Cutting; (8) Charles Clark; (9) Georgean Vogt; (10) John Prebish; (11) Steve Santilli; (12) Anthony Mawyer; (13) Gena Boggero; (14) Carl Atwell; (15) Phillip Marcum; and (16) James Hutton (collectively, the "Named Plaintiffs") and Defendant, Ford Motor Company ("Ford"), by and through their respective counsel.

### RECITALS

WHEREAS, on or about January 8, 2010, an action was filed titled *Custom Underground, Inc. et. al. v. Ford Motor Company*, in the United States District Court for the Northern District of Illinois and was assigned to the Honorable Matthew F. Kennelly and given the case number 1:10-cv-00127;

WHEREAS, the *Custom Underground* complaint alleged causes of action against Ford for negligence, breach of express warranty, and breach of implied warranty of merchantability. The complaint alleged that the 6.0-liter PowerStroke diesel engine used primarily in 2003-2007 heavy-duty Ford trucks and vans contained defects that resulted in poor engine performance, difficulty in starting the engine, and engine stalling and sought certification of a nationwide class of current and former owners and lessees of vehicles equipped with such engines;

WHEREAS, additional actions alleging similar claims and a common nucleus of facts were brought in several other districts around the country;

WHEREAS, on April 13, 2011, the Judicial Panel on Multidistrict Litigation created a new MDL proceeding before Judge Kennelly in the Northern District of Illinois, MDL 2223, *In re: Navistar Diesel Engine Products Liability Litigation*, which was given the case number 1:11-cv-02496. To date, thirty-nine actions, including *Custom Underground*, have been transferred to MDL 2223 for pre-trial coordination;

WHEREAS, on July 29, 2011, the Named Plaintiffs filed a Master Class Action Complaint asserting claims against Ford for breach of express warranty, breach of implied warranty of merchantability, an order declaring the durational limits of Ford's warranty unconscionable and hence unenforceable, and violation of the consumer fraud and/or unfair competition statutes of eleven states;

WHEREAS, the Settling Parties participated in significant discovery, including over six million pages of documents produced by Ford, hundreds of written discovery requests, discovery from various third parties, the depositions of more than 15 Ford personnel and two experts, the depositions of the Named Plaintiffs, inspections of dozens of vehicles, temperature differential testing on various vehicles, and flow testing on various vehicles' oil coolers;

WHEREAS, the Settling Parties engaged in extensive motion practice which resulted in, among other things, the narrowing of claims asserted by Named Plaintiffs, the addition of more detailed allegations, and a more detailed answer to Named Plaintiffs' allegations;

WHEREAS, Class Counsel conducted a thorough investigation and evaluation of the facts and law relating to the claims asserted to determine how best to serve the interests of the Named Plaintiffs and the Settlement Class;

WHEREAS, counsel for the Settling Parties conducted extensive arm's-length negotiations (including multiple sessions in which Judge Richard Neville participated as a mediator) regarding the substance and procedure of a possible class settlement prior to entering into this Settlement Agreement;

WHEREAS, the Plaintiffs, as well as Class Counsel, believe the Released Claims have merit. The Plaintiffs and Class Counsel, however, recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Released Claims against Ford through trial and appeals, and the importance of providing timely relief to Settlement Class Members whose vehicles are aging. The Plaintiffs and Class Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. The Plaintiffs and Class Counsel are mindful of the inherent problems of proof under, and possible defenses to, the Released Claims. The Plaintiffs and Class Counsel believe that the proposed Settlement confers substantial benefits upon the Settlement Class. Based on their evaluation of all of these factors, the Plaintiffs and Class Counsel have determined that the Settlement is in the best interests of the Settlement Class and represents a fair, reasonable, and adequate resolution of the litigation; and

3

WHEREAS, Ford denies any liability to the Plaintiffs or the Settlement Class. Ford has taken thorough discovery concerning the claims asserted by the Plaintiffs and believes it has meritorious defenses to all of the claims raised in this Litigation. Nevertheless, Ford recognizes and acknowledges the expense and length of continued proceedings that would be necessary to defend the Litigation through trial and appeals. In agreeing to enter this Settlement, Ford also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation;

NOW, THEREFORE IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties that, subject to approval of the Court, the Litigation and the Released Claims shall be fully and finally compromised, settled, and released and that the Litigation shall be dismissed with prejudice subject to and upon the terms and conditions described below.

## I. DEFINITIONS.

In addition to words and terms defined elsewhere in this Stipulation and Agreement of Settlement, the following words and terms shall have the definitions stated in this Article I.

### A. "Class Counsel."

"Class Counsel" means Plaintiffs' Lead Counsel and the members of the appointed Steering Committee.

### B. "Class Notice."

"Class Notice" means the notice of settlement that will be mailed to the "Settlement Class Members," as defined herein, containing the language in Exhibit D.

### C. "Class Vehicles."

"Class Vehicles" (or a "Class Vehicle") means model year 2003-2007 non-ambulance Ford vehicles sold or leased in the United States and equipped with a 6.0-liter PowerStroke

diesel engine that received one or more Warranty Repairs to a fuel injector; the exhaust gas recirculation ("EGR") valve; the EGR cooler; the oil cooler; and/or the turbocharger.

      **D.    "Defendant."**

"Defendant" means Ford Motor Company.

      **E.    "Effective Date of Settlement."**

"Effective Date of Settlement" means the first date after: (1) the Court enters the Final Order and Judgment, in all material respects similar to the form attached hereto as Exhibit C; and (2) all appellate rights with respect to said Final Order and Judgment have expired or been exhausted in such a manner as to affirm the Final Order and Judgment, except that an appeal solely from any award of attorneys' fees to Class Counsel shall not extend the Effective Date of Settlement.

      **F.    "Extended Warranty Period Repair."**

"Extended Warranty Period Repair" means repairs to or replacements of a fuel injector; the EGR valve; the EGR cooler; the oil cooler; and/or the turbocharger that otherwise would have been covered under the terms of Ford's New Vehicle Limited Warranty, but occurred (1) when the Class Vehicle had between five and six years in service (provided that it had been driven no more than 135,000 miles at the time); or (2) when the Class Vehicle had been driven between 100,000 and 135,000 miles (provided that it had no more than six years in service at the time).

      **G.    "Fairness Hearing."**

The "Fairness Hearing" is the final hearing, held after the Preliminary Approval Order is issued, in which the Court will determine whether this Settlement Agreement should be approved as fair, reasonable, and adequate, and whether the proposed Final Order and Judgment should be

entered, and if so, to determine the amount of attorneys' fees and costs to be awarded Class Counsel.

**H.** **"Ford."**

"Ford" means Ford Motor Company.

**I.** **"Ford New Vehicle Limited Warranty."**

"Ford New Vehicle Limited Warranty" means the written limited warranty provided by Ford for the Class Vehicles (example attached hereto as Exhibit A).

**J.** **"Litigation."**

"Litigation" means *In re: Navistar Diesel Engine Products Liability Litigation*, Case No. 11-cv-2496, MDL No. 2223, pending in the United States District Court for the Northern District of Illinois, and includes any and all actions that have been, or in the future are, transferred to MDL No. 2223.

**K.** **"Named Plaintiffs."**

"Named Plaintiffs" means the individuals and entities identified as plaintiffs in the Amended Master Class Action Complaint (*i.e.*, Custom Underground, Inc.; John Barrett; Scott and Heather Gray; Frank Brown Towing, Inc.; Cecil and Tressie Fulton; Karl Strong; Dinonno Enterprises, Inc., d/b/a Cutting Edge Concrete Cutting; Charles Clark; Georgean Vogt; John Prebish; Steve Santilli; Anthony Mawyer; Gena Boggero; Carl Atwell; Phillip Marcum; and James Hutton.)

**L.** **"Named Plaintiffs' Lead Counsel."**

"Named Plaintiffs' Lead Counsel" are Michael A. Caddell, Cynthia Chapman, and Cory Fein of Caddell & Chapman, 1331 Lamar, Suite 1070, Houston, TX 77010-3027.

**M.      "Out-of-Pocket Expenses."**

"Out-of-Pocket Expenses" is the documented amount paid to a repair facility for the parts and labor required to obtain an Extended Warranty Period Repair, or for Settlement Class Members who performed an Extended Warranty Period Repair themselves, the documented reasonable cost of the parts and the reasonable value of the time spent performing the repair. "Out-of-Pocket Expenses" does not include consequential damages such as lost revenue/profits, lost employee time from loss of use of the vehicle, or towing charges or other costs of transporting the vehicle to or from the place of repair.

**N.      "Plaintiffs"**

"Plaintiffs" means Named Plaintiffs and Unnamed Plaintiffs.

**O.      "Released Parties."**

"Released Parties" means Ford Motor Company, its past or present directors, officers, employees, partners, principals, agents, heirs, executors, administrators, successors, reorganized successors, subsidiaries, divisions, parents, related or affiliated entities, authorized dealers, underwriters, insurers, co-insurers, re-insurers, licensees, divisions, joint ventures, assigns, associates, attorneys, and controlling shareholders.

**P.      "Released Claims."**

"Released Claims" means any and all claims, demands, actions, causes of action, and suits pleaded against Ford in the Litigation and all other claims, demands, actions, causes of action of any nature whatsoever, including but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory and injunctive relief, common law, property, warranty and equitable claims), and also including Unknown Claims that were or could have been asserted by the Settlement Class Members against the

Released Parties in the Litigation, or in any other complaint, action, or litigation in any other court or forum based upon the 6.0L engine in the Class Vehicles.

**Q.    "Settlement."**

"Settlement" means the settlement contemplated by this Stipulation and Agreement of Settlement.

**R.    "Settlement Agreement."**

"Settlement Agreement" means this Stipulation and Agreement of Settlement.

**S.    "Settlement Class" or "Settlement Class Members."**

"Settlement Class" or "Settlement Class Members" mean:

> All entities and natural persons in the United States (including its Territories and the District of Columbia) who currently own or lease (or who in the past owned or leased) a model year 2003-2007 non-ambulance Ford vehicle sold or leased in the United States and equipped with a 6.0-liter PowerStroke diesel engine that received one or more repairs covered by Ford's New Vehicle Limited Warranty during the vehicle's first five years in service or 100,000 miles, whichever comes first, to a fuel injector; the exhaust gas recirculation ("EGR") valve; the EGR cooler; the oil cooler; or the turbocharger.

Excluded from the Settlement Class are:  (a) all federal court judges who have presided over this case and their spouses and anyone within three degrees of consanguinity from those judges and their spouses; (b) all entities and natural persons who elect to exclude themselves from the Settlement Class; (c) all entities and natural persons who have previously executed and delivered to Ford Motor Company releases of all their claims, including, but not limited to, members of the settlement class in *Williams A. Ambulance, Inc.,  et al. v. Ford Motor Company*, Case No. 1:06-cv-776 in the United States District Court for the Eastern District of Texas, Beaumont Division; (d) all entities and natural persons who:  (1) prior to the filing of the Motion for Preliminary Approval, filed an individual lawsuit (*i.e.*, a lawsuit that does not seek

certification as a class action) in any court asserting causes of action of any nature, including but not limited to claims for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory and injunctive relief, common law, property, warranty and equitable claims) based upon the 6.0L engine in a Class Vehicle, and (2) have not voluntarily dismissed such lawsuit without prejudice; and (e) Defendant's employees, officers, directors, agents, and representatives and their family members.

T.     **"Settling Parties."**

"Settling Parties" means Named Plaintiffs, Unnamed Plaintiffs, and Defendant.

U.     **"Steering Committee."**

"Steering Committee" consists of Richard J. Arsenault, Neblett, Beard & Arsenault; Daniel E. Becnel, Jr., Becnel Law Firm, L.L.C.; Mitchell A. Toups, Weller Green Toups & Terrell; Charles Schaffer, Levin, Fishbein, Sedran & Berman; Patrick W. Pendley, Pendley, Baudin & Coffin, L.L.P.; Peter J. Cambs, Parker Waichman Alonso, LLP; Mark P. Chalos, Lieff Cabraser Heimann & Bernstein; John F. Nevares, John F. Nevares & Associates, P.S.C.; William E. Hopkins, Jr., Beasley Allen Crow Methvin Portis & Miles, P.C.; John R. Climaco, Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA; Richard Barrett, Law Offices of Richard R. Barrett, PLLC; Cynthia B. Chapman, Caddell & Chapman; Roy A. Katriel, The Katriel Law Firm; and Robert K. Shelquist, Lockridge Grindal Nauen P.L.L.P.

V.     **"Unknown Claims."**

"Unknown Claims" means any and all Released Claims that any member of the Settlement Class does not know to exist against any of the Released Parties which, if known, might have affected his or her decision to enter into or to be bound by the terms of this Settlement. The Plaintiffs and the members of the Settlement Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be

true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, may hereafter exist, or heretofore have existed based upon the 6.0L engine in the Class Vehicles, without regard to subsequent discovery or existence of such different or additional facts concerning each of the Released Parties. The foregoing waiver includes, without limitation, an express waiver to the fullest extent permitted by law by the Plaintiffs and the Settlement Class Members of any and all rights under California Civil Code § 1542 or any similar law of any other state or of the United States, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**W.      "Unnamed Plaintiffs."**

"Unnamed Plaintiffs" means the individuals and entities named as plaintiffs in any action transferred to the Litigation who are not identified as Named Plaintiffs in the Master Class Action Complaint.

**X.      "Warranty Deductible."**

"Warranty Deductible" means a $100 deductible paid for a repair visit under the 6.0L PowerStroke® Diesel Engine Coverage of Ford's New Vehicle Limited Warranty following the expiration of the Bumper-To-Bumper Coverage of Ford's New Vehicle Limited Warranty.

**Y.      "Warranty Repair."**

"Warranty Repair" means a repair, replacement, or adjustment to any part covered under the Bumper-To-Bumper Coverage of Ford's New Vehicle Limited Warranty during the vehicle's first three years in service or 36,000 miles, whichever comes first, or to any part covered under

the 6.0L PowerStroke® Diesel Engine Coverage during the vehicle's first five years in service or 100,000 miles, whichever comes first.

## II.     SETTLEMENT CONSIDERATION.

In consideration for the Release provided for herein and the dismissal of the Litigation with prejudice, under the terms of this Settlement Agreement, Defendant agrees to provide consideration to the Settlement Class Members as follows.

### A.     Notice of Class Settlement.

Defendant agrees to pay all expenses in connection with a notice program on the terms provided in Section III.C.

### B.     Partial Reimbursement for Extended Warranty Period Repairs to Oil Cooler and/or EGR Cooler.

If a Class Vehicle received a Warranty Repair to the oil cooler and/or the EGR cooler, and a Settlement Class Member subsequently incurred Out-of-Pocket Expenses obtaining an Extended Warranty Period Repair to the oil cooler, the EGR cooler, or both on that same Class Vehicle, for each such Extended Warranty Period Repair, Ford will reimburse the Settlement Class Member for the actual Out-of-Pocket Expenses paid up to the following limits:  (1) $475 for a repair to the EGR cooler; (2) $525 for a repair to the oil cooler; and (3) $825 for a repair to both the EGR cooler and the oil cooler.

### C.     Partial Reimbursement for Extended Warranty Period Repairs to Fuel Injectors.

If a Class Vehicle received a Warranty Repair to one or more fuel injectors, and a Settlement Class Member subsequently incurred Out-of-Pocket Expenses obtaining an Extended Warranty Period Repair to one or more fuel injectors on that same Class Vehicle, Ford will reimburse the Settlement Class Member for the actual Out-of-Pocket Expenses paid up to the limits set forth in the table below for each such Extended Warranty Period Repair.

11

| Number of Injectors Repaired | Reimbursement Limit |
|---|---|
| 1 | $375 |
| 2 | $500 |
| 3 | $625 |
| 4 | $750 |
| 5 | $875 |
| 6 | $1,000 |
| 7 | $1,125 |
| 8 | $1,250 |

**D.** **Partial Reimbursement for Extended Warranty Period Repairs of EGR Valve.**

If a Class Vehicle received a Warranty Repair to the EGR valve, and a Settlement Class Member subsequently incurred Out-of-Pocket Expenses obtaining an Extended Warranty Period Repair to the EGR valve on that same Class Vehicle, Ford will reimburse the Settlement Class Member for the actual Out-of-Pocket Expenses paid up to $200 for each such Extended Warranty Period Repair.

**E.** **Partial Reimbursement for Extended Warranty Period Repairs of Turbocharger.**

If a Class Vehicle received a Warranty Repair to the turbocharger, and a Settlement Class Member subsequently incurred Out-of-Pocket Expenses obtaining an Extended Warranty Period Repair to the turbocharger on that same Class Vehicle, Ford will reimburse the Settlement Class Member for the actual Out-of-Pocket Expenses paid up to $750 for each such Extended Warranty Period Repair.

**F.** **Partial Reimbursement of Deductibles.**

If a Settlement Class member has not submitted a claim for reimbursement for one or more Extended Warranty Period Repairs to a Class Vehicle pursuant to Sections II.B–II.E, and the Settlement Class Member has paid more than one Warranty Deductible in connection with

12

obtaining a Warranty Repair for that Class Vehicle, Ford will reimburse the Settlement Class Member $50 for the second and each subsequent Warranty Deductible the Settlement Class Member paid for the same Class Vehicle, up to a limit of $200 in connection with four Warranty Deductible payments.

      **G.**     **Submission of Claims.**

To obtain a reimbursement for Out-of-Pocket Expenses incurred obtaining an Extended Warranty Period Repair or a reimbursement for a Warranty Deductible, a Settlement Class Member must submit a claim to Ford.

      **1.**     **Timing of Claims for Reimbursement of Costs.**

Claims for reimbursement of costs incurred for an Extended Warranty Period Repair or Warranty Deductible payment must be submitted by December 31, 2013. Ford shall not be required to review or pay any claims for reimbursement received after this deadline.

      **2.**     **Content of and Support for Claims for Partial Reimbursement of Out-of-Pocket Expenses for Extended Warranty Period Repairs of Certain Components.**

Claims for partial reimbursement of Out-of-Pocket Expenses for Extended Warranty Period Repairs to certain components (Sections II.B – II.E) must include: (1) the vehicle identification number; (2) proof that the Settlement Class Member paid the Out-of-Pocket Expenses as to which reimbursement is sought (including the amount of Out-of-Pocket Expenses paid, the date of the Extended Warranty Period Repair(s), and the mileage on the Class Vehicle at the time of Extended Warranty Period Repair(s)); and (3) proof that the Settlement Class Member is eligible for partial reimbursement of the Extended Warranty Period Repair(s) under the terms of this Settlement by providing documents sufficient to show that: (i) a Warranty Repair was made to the same component on the same Class Vehicle (except where a Settlement Class Member is seeking reimbursement for an EGR cooler and/or oil cooler under Section II.B,

in which case the Settlement Class Member need only show that a Warranty Repair was made to either the oil cooler or the EGR cooler); and (ii) the repair as to which reimbursement of Out-of-Pocket Expenses is sought was an Extended Warranty Period Repair (*i.e.*, occurred during the time/mileage period listed in Section I.F, and that the repair would have been covered by the Ford New Vehicle Limited Warranty). A Settlement Class Member need not provide further proof that a Warranty Repair was made to the same component if Ford has, via the claim form-generation process, informed the Settlement Class Member that a Warranty Repair was made to the component(s). The Settlement Class Member may offer evidence that the Extended Warranty Period Repair was covered by the Ford New Vehicle Limited Warranty by attesting under the penalty of perjury that the vehicle was maintained using proper parts and fluids and in accordance with the vehicle's scheduled maintenance guide; the vehicle was not misused, such as by overloading or racing; and the engine or any related part was not altered or modified, including by installation of non-Ford Motor Company parts such as performance chips.

### 3. Content of and Support for Claims for Partial Reimbursement of Warranty Deductibles.

Claims for partial reimbursement of any Warranty Deductible(s) (Section II.F) must include: (1) the vehicle identification number; and (2) proof, such as an invoice marked paid by the dealer, that the Settlement Class Member paid two or more Warranty Deductibles (including, as to each such payment, the amount paid, the date of the Warranty Repair that necessitated the Warranty Deductible, and the mileage on the Class Vehicle at the time of the Warranty Repair that necessitated the Warranty Deductible).

### 4. Rejected Claims.

Ford may reject any claim that does not include the required information specified above. Ford reserves the right to investigate the claim, including by requesting further documentation in

order to determine whether the claim is valid. If Ford rejects the claim, it will advise the Settlement Class Member of the reason for the rejection (*e.g.*, missing information, ineligibility for a refund). If the claim is rejected due to missing information, Ford will give the Settlement Class Member 30 days to resubmit the claim with additional information, so long as the original claim was submitted by the deadline noted above.

### 5. Disputed Claims.

If a Settlement Class Member disputes either Ford's rejection of a claim or the amount to be paid pursuant to the claim, the Settlement Class Member may appeal Ford's decision by submitting its claim and an explanation of Ford's alleged error within one month after the Settlement Class Member is notified of Ford's decision to Kurtzman Carson Consultants**,** which shall make a final, binding determination following receipt of Ford's response to the appeal.

### H. Administration of the Settlement.

Ford will retain a claims administrator to administer the program described above and will bear all costs and expenses related to the administration of this Settlement.

Promptly after the Effective Date of Settlement, Ford will establish a "Ford Claim Center" to receive and appropriately respond to claims from Settlement Class Members. The Ford Claim Center will include (a) personnel assigned to manage the settlement implementation process; (b) a toll-free telephone number that Settlement Class Members may call for information; (c) a mailing address to which Settlement Class Members can send claims for benefits; and (d) a website containing information about the Settlement, including claim forms that can be downloaded and submitted by mail.

### I. Attorneys' Fees and Expenses.

Ford has agreed to pay to Plaintiffs' counsel reasonable attorneys' fees and expenses, separate and apart from the consideration flowing to the Settlement Class, of up to $12,800,000

in fees and $1,250,000 in expenses. Named Plaintiffs' Lead Counsel will apply on behalf of Plaintiffs' counsel to the Court for an award of attorneys' fees and expenses of no more than this amount, covering all legal services provided by Plaintiffs' counsel in the past and future to Plaintiffs and the Settlement Class Members in connection with the Litigation, the Settlement of the Litigation, any appeal in connection with the Settlement, and implementation of the Settlement Agreement (the "Fee and Expense Application"). Ford will not dispute or oppose the Fee and Expense Application, which shall be subject to Court approval. Further, Plaintiffs' counsel may not be awarded, and shall not accept, any amount in excess of these sums. The Court will determine what amount of fees and expenses shall be awarded and issue an Order stating the amount of fees and expenses to be awarded. Pursuant to the Order Regarding Management of Timekeeping, Attorneys' Fees, and Costs Reimbursement Issues, Class Counsel shall resolve all issues regarding the allocation of fees and expenses among themselves.

Should any counsel other than Named Plaintiffs' Lead Counsel petition the Court for an award of attorneys' fees, costs, or expenses, Class Counsel and Ford and their counsel shall cooperate in opposing any such petition. Neither Class Counsel nor Ford shall be required to pay any amounts of money to such counsel.

Given their duty to the Class and their commitment to secure approval and implementation of the class settlement, the undersigned Plaintiffs' counsel acknowledge that, if they seek to recover attorneys' fees as part of this Settlement, they are ethically prohibited from having any financial interest in a matter, based upon the 6.0L engine in a Class Vehicle, involving a person or entity who opts out of this Settlement to pursue an individual lawsuit against Ford. The undersigned Plaintiffs' counsel further acknowledge that they will advise all Plaintiffs' counsel seeking attorneys' fees of the foregoing ethical prohibition.

16

Within ten business days after the Effective Date of Settlement, Ford shall pay the amount awarded by the Court for attorneys' fees and expenses to Named Plaintiffs' Lead Counsel.

Named Plaintiffs' Lead Counsel must provide Ford with a completed W-9 form for the first payee of attorneys' fees and costs. Any order or proceedings relating to the Fee and Expense Application, or any appeal solely from any order related thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of the Judgment approving this Agreement and the Settlement.

> **J.** **Service Award for Named Plaintiffs.**

As part of their motion seeking final approval of the Settlement at the Fairness Hearing, Named Plaintiffs' Lead Counsel will submit to the Court an application for a total $150,000 service award, to be allocated by the Court among the Named Plaintiffs. Ford has agreed to pay this amount separate from the fee and expense award described above. Ford agrees not to oppose this application. Ford will pay the Court-approved Service Award within ten business days after the Effective Date of Settlement by sending payment to Named Plaintiffs' Lead Counsel for forwarding to the Named Plaintiffs.

## III. SETTLEMENT APPROVAL PROCESS.

> **A.** **Preliminary Approval of Settlement.**

Promptly after the execution of this Settlement Agreement, counsel for the Settling Parties shall jointly present this Settlement Agreement to the Court, along with a motion requesting that the Court issue a Preliminary Approval Order substantially in the form attached as Exhibit B, which shall include, among other things, the following:

> 1. preliminary certification under Federal Rule of Civil Procedure 23, for

settlement purposes only, of the Settlement Class;

2.      preliminary approval of the Settlement memorialized in this Settlement Agreement as fair, reasonable and adequate;

3.      approval of the Class Notice containing the language in Exhibit D for distribution to Settlement Class Members;

4.      a direction to Ford to distribute, at its expense, the Class Notice in the form approved by the Court to Settlement Class Members; a direction that each potential Settlement Class Member who wishes to be excluded from the Settlement Class must respond to the Class Notice in writing in accordance with the instructions set forth in the Class Notice and that their responses must be received by the date set forth in the Preliminary Approval Order;

5.      a finding that the Class Notice constitutes the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who can be identified with reasonable effort, and constitutes valid, due, and sufficient notice to Settlement Class Members in full compliance with the requirements of applicable law, including the due process clause of the United States Constitution;

6.      a direction that, pending final determination of the joint application for approval of this Settlement Agreement, all proceedings in this Litigation other than settlement approval proceedings shall be stayed and all Settlement Class Members who do not request exclusion from the Settlement Class shall be enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any court or before any tribunal based upon the 6.0L diesel engine in the Class Vehicles;

7.      a direction that any Settlement Class Member who has not properly and timely requested exclusion from the Settlement Class will be bound by the Final Order and Judgment;

8.     the scheduling of a final hearing to determine whether this Settlement Agreement should be approved as fair, reasonable, and adequate and whether the proposed Final Order and Judgment should be entered (the "Fairness Hearing");

9.     a direction that the Ford shall tabulate communications from prospective Settlement Class Members asking to be excluded from the Settlement Class and shall report the names and addresses of such entities and natural persons to the Court and to Named Plaintiffs' Lead Counsel no less than seven days before the Fairness Hearing;

10.     a direction that Named Plaintiffs' Lead Counsel shall file a Fee and Expense Application and Named Plaintiffs' Service Award application (which may be part of Plaintiffs' Motion for Final Approval) approximately 14 days prior to the date set forth in the Preliminary Approval Order as the deadline for the objections; and that Named Plaintiffs' Lead Counsel shall file any supplemental brief in support of final approval of the Settlement Agreement no later than seven days prior to the Fairness Hearing; and that the Court shall determine at the Fairness Hearing in what amount attorneys' fees and reimbursement of expenses should be awarded to Plaintiffs' counsel, as well as the amount of the Service Awards that should be awarded to the Named Plaintiffs;

11.     a direction that any Settlement Class Member who wishes to object to the proposed Settlement Agreement, the proposed Final Order and Judgment, the Fee and Expense Application, and/or Named Plaintiffs' Service Award must file and serve such objections no later than the date set forth in the Preliminary Approval Order, which shall be approximately one month before the Fairness Hearing, together with copies of all papers in support of his or her position as provided in Section III.D.1. of the Settlement Agreement.  The Class Notice shall state that the Court will not consider the objections of any Settlement Class Member who has not

properly served copies of his or her objections on a timely basis or complied with the requirements of Section III.D.1 of the Settlement Agreement.

### B.    Notice to Attorneys General.

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, within ten days after the motion for Preliminary Approval Order is filed, Ford shall provide notice of this proposed Settlement to the Attorney General of the United States, and the attorneys general of each state or territory in which a Settlement Class Member resides.  The notice will include (1) a copy of the Master Class Action Complaint and Amended Master Class Action Complaint, (2) a copy of this Settlement Agreement and its exhibits, and (3) a reasonable estimate of the number of class members in each state/territory and their percentage representation in the Settlement Class.  Ford will provide copies of such notifications to Named Plaintiffs' Lead Counsel at the time of their submission to the attorneys general.

### C.    Notice to Settlement Class Members.

The claims administrator will mail, by first-class mail at Ford's expense, the Class Notice containing the language in Exhibit D, and substantially in the same form as in Exhibit D.  As soon as practicable after the preliminary approval of the Settlement, the claims administrator will obtain from R.L. Polk & Co. the name and last known address of each potential member of the Settlement Class.  The last known address of potential Settlement Class Members will be checked and updated via the National Change of Address database.  Thereafter, the claims administrator shall send a copy of the Class Notice by first-class mail to each Settlement Class Member so identified.  The claims administrator shall use its best efforts to complete the mailing of the Class Notice to potential Settlement Class Members within four months after the preliminary approval of the Proposed Settlement.

If any Class Notice mailed to any potential Settlement Class Member is returned to the claims administrator as undeliverable, then the claims administrator shall perform a reasonable search for a more current name and/or address for the potential Settlement Class Member and (provided that a more current name and/or address can be found through such a search) re-send the returned Class Notice to the potential Settlement Class Member by first-class mail. In the event that any Class Notice mailed to a potential Settlement Class Member is returned as undeliverable a second time, then no further mailing shall be required. The claims administrator will promptly log each Class Notice that is returned as undeliverable and provide copies of the log to Named Plaintiffs' Lead Counsel.

**D.     Response to Notice.**

**1.     Objection to Settlement.**

Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must, by the date specified in the Preliminary Approval Order and recited in the Class Notice, file any such objection with the Court, and provide copies of the objection to: (1) Michael A. Caddell of Caddell & Chapman, 1331 Lamar, Suite 1070, Houston, TX 77010-3027; and (2) Brian C. Anderson, O'Melveny & Myers, L.L.P., 1625 Eye Street, NW, Washington, DC 20006.

Any objection to the Settlement Agreement must be individually and personally signed by the Settlement Class Member (if the Settlement Class Member is represented by counsel, the objection additionally must be signed by such counsel), and must include:

a.     the objector's full name, address, and telephone number;

b.     the model, model year, and vehicle identification number of the Settlement Class Member's Class Vehicle, along with proof that the objector has owned or leased a Class Vehicle (*i.e.*, a true copy of a vehicle title, registration, or license receipt);

21

        c.      a written statement of all grounds for the objection accompanied by any legal support for such objection;

        d.      copies of any papers, briefs, or other documents upon which the objection is based;

        e.      a list of all cases in which the objector and/or their counsel has filed or in any way participated in—financially or otherwise—objections to a class action settlement in the preceding five years;

        f.      the name, address, email address, and telephone number of all attorneys representing the objector; and

        g.      a statement indicating whether the objector and/or their counsel intends to appear at the Fairness Hearing, and if so, a list of all persons, if any, who will be called to testify in support of the objection.

Any member of the Settlement Class who does not file a timely written objection to the Settlement and notice of his intent to appear at the Fairness Hearing or who fails to otherwise comply with the requirements of this section shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

**2.      Request for Exclusion.**

Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a request for exclusion ("Request for Exclusion") to Ford at the address specified in the Class Notice by the date specified in the Preliminary Approval Order and recited in the Class Notice. Settlement Class Members who wish to be excluded from the Settlement Class must do so with respect to all Class Vehicles they own(ed) or lease(d); Settlement Class Members may not exclude themselves from the Settlement Class with respect to some Class Vehicles and

include themselves in the Settlement Class with respect to other Class Vehicles. To be effective, the Request for Exclusion must be sent via first-class U.S. mail to the specified address and:

a. include the Settlement Class Member's full name, address, and telephone number;

b. identify the model, model year, and vehicle identification number of the Settlement Class Member's Class Vehicle(s);

c. specifically and unambiguously state his or her desire to be excluded from the Settlement Class in *In re: Navistar Diesel Engine Products Liability Litigation*; and

d. be individually and personally signed by the Settlement Class Member (if the Settlement Class Member is represented by counsel, the Request for Exclusion additionally must be signed by such counsel).

Any Settlement Class Member who fails to submit a timely and complete Request for Exclusion sent to the proper address, shall be subject to and bound by this Settlement Agreement and every order or judgment entered pursuant to this Settlement Agreement. Any purported Request for Exclusion sent to such address that is ambiguous or internally inconsistent with respect to the Settlement Class Member's desire to be excluded from the Settlement Class will be deemed invalid unless determined otherwise by the Court.

Ford will receive purported Requests for Exclusion and will follow guidelines developed jointly by Named Plaintiffs' Lead Counsel and Ford's counsel for determining whether they meet the requirements of a Request for Exclusion. Any communications from Settlement Class Members (whether styled as an exclusion request, an objection, or a comment) as to which it is not readily apparent whether the Settlement Class Member meant to exclude himself or herself

23

from the Class will be evaluated jointly by Named Plaintiffs' Lead Counsel and Ford's counsel, who will make a good faith evaluation, if possible. Any uncertainties about whether a Settlement Class Member is requesting exclusion from the Settlement Class will be resolved by the Court.

Ford will maintain a list of all Requests for Exclusion. Ford shall report the names and addresses of all such entities and natural persons requesting exclusion to the Court and Named Plaintiffs' Lead Counsel seven days prior to the Final Hearing, and the list of entities and natural persons deemed by the Court to have excluded themselves from the Settlement Class will be attached as an exhibit to the Final Order and Judgment.

**E.      Fairness Hearing.**

On the date set forth in the Preliminary Approval Order, which shall be approximately one month after the deadline for submitting objections and Requests for Exclusion, a Fairness Hearing will be held at which the Court will:  (a) decide whether to finally certify the Settlement Class, (b) decide whether to approve the Settlement Agreement as fair, reasonable, and adequate, (c) decide whether to approve the application for a Service Award for the Named Plaintiffs, and (d) decide whether to approve Named Plaintiffs' Lead Counsel's Fee and Expense Application and issue an Order memorializing that decision.

**F.      Final Order and Judgment.**

If this Settlement Agreement is finally approved by the Court, a Final Order and Judgment directing the entry of judgment pursuant to FED. R. CIV. P. 54(b) shall be entered substantially in the form attached as Exhibit C, as follows:

1.      certifying the Settlement Class solely for purposes of this Settlement Agreement;

2.      approving the Settlement Agreement as fair, reasonable, and adequate as it applies to the Settlement Class;

3.      declaring the Settlement Agreement to be binding on Ford and the Plaintiffs, as well as all members of the Settlement Class;

4.      dismissing on the merits and with prejudice the Master Class Action Complaint in *In re: Navistar Diesel Engine Products Liability Litigation*, each and every action transferred to MDL No. 2223, and all Released Claims;

5.      forever discharging the Released Parties from all Released Claims;

6.      indicating the amount of the Service Award for the Named Plaintiffs;

7.      indicating the amount of attorneys' fees and expenses to be awarded to Plaintiffs' counsel; and

8.      providing that all Settlement Class Members who did not request exclusion from the Settlement Class shall be permanently enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of action asserting the Released Claims in any court or before any tribunal.

**G.      Withdrawal from Settlement.**

Either party shall have the option to withdraw from this Settlement Agreement, and to render it null and void, if any of the following occurs:

1.      any objections to the proposed settlement are sustained and such objection results in changes to the agreement that the withdrawing party deems in good faith to be material (*e.g.*, because it increases the cost of the settlement, delays approval and/or implementation of the settlement, or deprives the withdrawing party of a benefit of the settlement);

2.      any attorney general is allowed to intervene in the action and such intervention results in changes to the agreement that the withdrawing party deems in good faith

25

to be material (*e.g.*, because it increases the cost of the settlement, delays approval and/or implementation of the settlement, or deprives the withdrawing party of a benefit of the settlement);

        3.     the preliminary or final approval of the Settlement Agreement is not obtained without modification and any modification required by the Court for approval is deemed in good faith to be material and is not agreed to by the withdrawing party (*e.g.*, because it increases the cost of the settlement, delays approval and/or implementation of the settlement, or deprives the withdrawing party of a benefit of the settlement); and

        4.     entry of the Final Order and Judgment described in this Settlement is reversed or substantially modified by an appellate court, except that a reversal or modification of an order awarding reasonable attorneys' fees and expenses shall not be a basis for withdrawal.

Ford shall, in addition, have the option to withdraw from this Settlement Agreement, and to render it null and void, if Settlement Class Members collectively owning or leasing 5,000 or more Class Vehicles exclude themselves from the Settlement.

To withdraw from the Settlement Agreement under this paragraph, the withdrawing party must provide written notice to the other party's lead counsel and to the Court. In the event either party withdraws from the Settlement, this Settlement Agreement shall be null and void, shall have no further force and effect with respect to any party in the Litigation, and shall not be offered in evidence or used in any litigation for any purpose, including the existence, certification, or maintenance of any purported class. In the event of such withdrawal, this Settlement Agreement and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Settling Parties, and shall not be deemed or construed to be an admission or confession by any party of any fact, matter, or

proposition of law, and shall not be used in any manner for any purpose, and all parties to the Litigation shall stand in the same position as if this Settlement Agreement had not been negotiated, made, or filed with the Court. Upon withdrawal, either party may elect to move the Court to vacate any and all orders entered pursuant to the provisions of this Settlement Agreement.

### H. Release of Settlement Class Members' Claims.

Upon the Effective Date of the Settlement, the Plaintiffs and each Settlement Class Member shall be deemed to have, and by operation of the Final Order and Judgment shall have, released, waived, and discharged the Released Parties from his, her, or its Released Claims as defined above. This release will run with the vehicle if the Settlement Class Member sells the Class Vehicle.

## IV. MISCELLANEOUS PROVISIONS.

### A. Class Certification

The Parties agree that for the purposes of this Settlement only, certification of the Settlement Class as defined above in Paragraph I.S is appropriate pursuant to Fed. R. Civ. P. 23(b)(3).

### B. Effect of Exhibits.

The exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

### C. No Admission.

This Settlement Agreement is for settlement purposes only. Neither the fact of, nor any provision contained in this Settlement Agreement, nor any action taken hereunder, shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged in the Litigation or of any wrongdoing, fault, violation of law, or liability of any kind on the part of

27

Ford or any admissions by Ford of any claim or allegation made in any action or proceeding against Ford. If this Settlement Agreement is terminated and becomes null and void, the class action portions of this Settlement shall have no further force and effect with respect to any party to the Litigation and shall not be offered in evidence or used in the Litigation or any other proceeding. This Settlement Agreement shall not be offered or be admissible in evidence against Ford or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Information provided by Ford to the Plaintiffs and Class Counsel in connection with settlement negotiations is for settlement purposes only and shall not be used or disclosed for any other purpose whatsoever.

**D.      Return of Confidential Documents.**

Upon the Effective Date of the Settlement, all documents and information marked or designated as Confidential or Highly Confidential, as defined in and subject to the Protective Order, signed October 29, 2011, or any previous protective order entered in this Litigation, shall be disposed of within the time frame and according to the procedures set forth in the Protective Order.

**E.      Entire Agreement.**

This Settlement Agreement represents the entire agreement and understanding among the Settling Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Settlement Agreement. The Settling Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this Settlement Agreement has been made or relied on except as expressly set forth in this Settlement Agreement. No modification or waiver of any provisions of this Settlement Agreement shall in

any event be effective unless the same shall be in writing and signed by the person against whom enforcement of the Settlement Agreement is sought.

**F.     Counterparts.**

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any party who has signed it, and all of which shall be deemed a single agreement.

**G.     Arm's-Length Negotiations.**

The Settling Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length.  All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Settling Parties in entering into this Settlement Agreement.  Both Settling Parties have both participated in the drafting of this agreement and it is not to be construed in favor of or against either Settling Parties.

**H.     Dispute Resolution.**

Any dispute, challenge, question, or the like relating to this Settlement Agreement (other than those which this Settlement Agreement provides shall be resolved by otherwise) shall be heard only by this Court.

**I.     Continuing Jurisdiction.**

The Court shall retain continuing and exclusive jurisdiction over the parties to this Settlement Agreement, including all Settlement Class Members, for the purpose of the administration and enforcement of this Settlement Agreement.

**J.     Binding Effect of Settlement Agreement.**

This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties and their representatives, heirs, successors, and assigns.

**K.      Nullification.**

In the event any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect other provisions if Ford and Named Plaintiffs' Lead Counsel, on behalf of the Settling Parties, mutually elect to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Settlement Agreement.

**L.      Extensions of Time.**

The Settling Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice (subject to Court approval as to Court dates).

**M.      Service or Notice.**

Whenever, under the terms of this Settlement Agreement, a person is required to provide service or written notice to Ford or Named Plaintiffs' Lead Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their successors give notice to the other Settling Parties in writing:

<u>As to Plaintiffs</u>:          Michael A. Caddell
                               Cynthia B. Chapman
                               Cory Fein
                               Caddell & Chapman
                               1331 Lamar, Suite 1070
                               Houston, TX 77010-3027

<u>As to Ford</u>:              Brian C. Anderson
                               O'Melveny & Myers, L.L.P.
                               1625 Eye Street, NW
                               Washington, D.C. 20006

**N.      Authority to Execute Settlement Agreement.**

Each counsel or other person executing this Settlement Agreement or any of its exhibits on behalf of any party hereto warrants that such person has the authority to do so.

\*    \*    \*    \*    \*    \*

IN WITNESS HEREOF, the Settling Parties have caused this Settlement Agreement to be executed, by their duly authorized attorneys, as of November 1, 2012.

ON BEHALF OF FORD MOTOR COMPANY

Brian C. Anderson
O'Melveny & Myers, L.L.P.
1625 Eye Street, NW
Washington, D.C. 20006

ON BEHALF OF PLAINTIFFS

Michael A. Caddell
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027

Cynthia B. Chapman
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027

Cory S. Fein
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
P.O. Box 350
Beaumont, TX 77704

32

ON BEHALF OF FORD MOTOR COMPANY

_____

Brian C. Anderson
O'Melveny & Myers, L.L.P.
1625 Eye Street, NW
Washington, D.C. 20006

ON BEHALF OF PLAINTIFFS

_____

Michael A. Caddell
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027

_____

Cynthia B. Chapman
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027

_____

Cory S. Fein
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027

_____

Mitchell A. Toups
Weller, Green, Toups & Terrell, L.L.P.
P.O. Box 350
Beaumont, TX 77704

32

Peter Cambs
Parker Waichman LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134


Richard J. Arsenault
Neblett, Beard & Arsenault
2220 Bonaventure Court
Alexandria, LA 71301

33

_____

Peter Cambs
Parker Waichman LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134

_____

Richard J. Arsenault
Neblett, Beard & Arsenault
2220 Bonaventure Court
Alexandria, LA 71301