**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re:  NAVISTAR DIESEL ENGINE )   Case No. 11 C 2496
PRODUCTS LIABILITY )   MDL NO. 2223
LITIGATION )

**This Document Relates to:  All Cases**

---

**MEMORANDUM IN SUPPORT OF MOTION
TO REQUIRE OBJECTORS TO POST APPEAL BONDS**

---

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT .......................................................................................................5

    A.    The Court's Orders Approving the Settlement Are Reviewed Under a "Highly Deferential" Abuse of Discretion Standard ...............................................5

    B.    The Appeals Lack Objective Merit......................................................................6

    C.    This Court Has Authority to Impose Bonds on Appeal.........................................6

    D.    The Court Should Require Appeal Bonds to Protect the Class Members and the Settling Parties ...............................................................................................7

        1.    Appellants Have the Financial Ability to Post a Bond ...............................8

        2.    There is Significant Risk that the Objectors Will Not Pay Plaintiffs' Costs if the Appeals Are Unsuccessful .......................................................9

        3.    The Appeals are Meritless and Highly Unlikely to Succeed ....................10

        4.    Evidence of Bad Faith or Vexatious Conduct...........................................10

    E.    The Court Should Require Appeal Bonds in the Amount of $77,000 ...........................................................................................................11

        1.    The Appeal Bond Should Include Taxable Costs ......................................12

        2.    The Appeal Bond Should Include Extra Costs of Settlement Administration ..........................................................................................14

            a.    The Objectors' Appeals Will Result in Additional Costs of Maintaining the Settlement Website, Toll-Free Number and P.O. Box .................................................................................14

            b.    The Delay Caused By Objectors' Appeals Will Cost the Class Far More than the Amount of the Bond Sought...................14

III.    CONCLUSION..................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Adsani v. Miller*,
    139 F.3d 67 (2nd Cir. 1998) ............................................................................... 8

*Allapattah Servs., Inc. v. Exxon Corp.*,
    No. 91-0986, 2006 WL 1132371, at *1
    (S.D. Fla. Apr. 7, 2006) ...................................................................................11

*Anderson v. Steers, Sullivan, McNamar & Rogers*,
    998 F.2d 495 (7th Cir. 2003) ............................................................................. 7

*Azizian v. Federated Dept Stores, Inc.*,
    499 F.3d 950 (9th Cir. 2007) ........................................................................... 12

*Barnes v. FleetBoston Financial Corp.*,
    Case No. 01-10395-NG, 2006 WL 6916834, at *1
    (D.Mass. Aug 22, 2006) ......................................................................... 6, 11, 15

*Birner v. General Motors Corp.*,
    Case No. 1:06-1148, 2007 WL 269847 at *1
    (C.D.Ill. Jan. 26 2007) .....................................................................................4

*Crain v. Comm'r of Internal Revenue*,
    737 F.2d 1417 (5th Cir. 1984) ......................................................................... 10

*Daud v. Gold'n Plump Poultry, Inc.*,
    No. 06-4013, slip op. at 4 (D. Minn. July 28, 2009) ......................................... 13

*Gautreaux v. Chi. Hous. Auth.*,
    491 F.3d 649 (7th Cir. 2007) ............................................................................. 5

*H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*,
    11-CV-00742, 2012 WL 404895 at *1
    (E.D. Wis. Feb. 7, 2012) *aff'd as modified*, 694 F.3d 827 (7th Cir. 2012) ...................... 12

*Heekin v. Anthem, Inc.*,
    No. 1:05-cv-01908, 2013 WL 752637
    (S.D. Ind. Feb. 27, 2013) ........................................................................ *passim*

*In re AOL Timer Warner, Inc., Sec. & "ERISA " Litig.*,
    No. 02-5575, 2007 WL 2741033, at *1
    (S.D.N.Y. Sept. 20, 2007) ................................................................................ 8

*In re Cardizem CD Antitrust Litig.* ("*Cardizem*"),
    391 F.3d 812 (6th Cir. 2004) ........................................................................11

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................ 6

*In re Currency Conversion Fee Antitrust Litig.*,
    01 MDL 1409, 2010 WL 1253741
    (S.D.N.Y. Mar. 5, 2010) ...............................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
    721 F. Supp. 2d 210 (S.D.N.Y. 2010) *opinion clarified*,
    21 MC 92 SAS, 2010 WL 5186791
    (S.D.N.Y. July 20, 2010) .............................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010).............................................. 2, 3, 8

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    MDL No. 08-1999, 2010 WL 4630846, at *1
    (E.D. Wis. Nov. 2, 2010) ............................................................................ 9

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3rd Cir. 2005) ...................................................................... 7

*In re NASDAQ Market-Makers Antitrust Litig.* ("*NASDAQ*"),
    187 F.R.D. 124 (S.D.N.Y. 1999) ...............................................................11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    520 F. Supp. 2d 274 (D. Mass. 2007) ...................................................... 15

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
    643 F. Supp. 2d 1107 (D. Minn. 2009)...................................................... 6

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.* ("*Uponor*"),
    No. 11- 2247, 2012 WL 4328370 (D. Minn. Sept. 20, 2012).......................... 6

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................... 5, 10

*Laborers' Pension Fund v. Lay-Com, Inc.*,
    580 F.3d 602 (7th Cir. 2009) ...................................................................... 5

*Marek v. Chesny*,
    473 U.S. 1 (1985)........................................................................................ 12

*Pedraza v. United Guar. Corp.*,
    313 F.3d 1323 (11th Cir. 2002) ............................................................................. 7

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*,
    574 F.3d 852 (7th Cir. 2009) ........................................................................... 5, 10

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2002) .................................................................................. 5

*Walton v. City of Carmel*,
    No. 05-902, 2008 WL 2397683, at *1
    (S.D. Ind. June 10, 2008) ..................................................................................... 12

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .................................................................................. 5

## **STATUTES**

28 U.S.C. § 1920 ............................................................................................... 12–13

## **RULES**

Fed. R. App. P. 7 ..................................................................................................... 7

## **OTHER AUTHORITIES**

Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation:
    A Pocket Guide for Judges 17 (Fed. Judicial Ctr. 3d ed. 2010) ....................................6

Black's Law Dictionary (9th ed.2009).........................................................................11

Charles Alan Wright, Arthur S. Miller, Edward H. Cooper & Catherine T. Struve,
    16A Federal Practice and Procedure § 3953, at 582–83
    (4th ed. 2008 & Supp. 2012).........................................................................12

Plaintiffs file this Memorandum in Support of Motion to Require Objector/Appellants to file Appeal Bonds, and state as follows:

## I.    <u>INTRODUCTION</u>

Two objectors have jointly appealed this Court's Final Order and Judgment, as well as any subsequent orders regarding the settlement approval and/or attorneys' fees.  *See* Dkt. 331 (appeal filed by Donald K. Birner on behalf of Robert G. Burress, and by Jeffrey Weinstein on behalf of Michael A. Neill.)

Class Plaintiffs request that Mr. Burress and Mr. Neill (together, the "Objectors") be required to each post an appeal bond pursuant to Rule 7 of the Federal Rules of Appellate Procedure ("FRAP") as security to ensure against the additional taxable appellate costs and administrative costs that these frivolous appeals will inflict.  Plaintiffs request that both of the Objectors be ordered to post an appeal bond, jointly and severally, in the amount of $77,000 for the direct taxable costs of the appeal ($25,000) and the administrative costs of the delay caused by the appeal ($52,000), and file within 10 days of the Court's Order proof that they have secured the bonds directed by the Court's Order.  *See Heekin v. Anthem, Inc.*, No. 1:05-cv-01908, 2013 WL 752637, (S.D. Ind. Feb. 27, 2013) (ordering two objectors to each post $250,000 bonds, jointly and severally in situation similar to this case).

The Objectors' appeals, like the objections on which they are based, are meritless, and it is highly improbable that the Court's Judgment will be reversed (especially given the applicable abuse-of-discretion review standards on appeal).  As this Court is aware, based on its detailed findings in support of its Judgment, the appellants' underlying objections were inconsistent with applicable Seventh Circuit law, bereft of any supporting evidence, flawed in their reasoning, based on a failure to appreciate the risks of litigating the case, and largely based on a misunderstanding of the terms of the Settlement.

The fact that Objectors have given notice that they are appealing orders and judgments *yet to be enetered* (including orders regarding attorneys' fees that have not even been issued yet) is further proof that Objectors' appeals are being pursued for the solitary purpose of blocking settlement distributions and the payment of attorneys' fees in order to extract side payments from Class Counsel. As explained more fully below, the only purpose and impact of these highly questionable appeals is to delay the commencement of the distribution of funds to Class members for two years or more, resulting in some Class members suffering irreparable harm by never receiving their share of the settlement funds inasmuch as the passage of time will result in a higher percentage of valid claims going unfiled.

These are exactly the type of "professional objector" appeals that numerous courts have criticized. Mr. Weinstein has objected to numerous other class action settlements and, in fact, intentionally violated this Court's order that he disclose his prior objections in order to hide this information from the Court. Plaintiffs' Response to Objections discussed how Mr. Neill and his counsel, Mr. Weinstein, raised the same meritless objections in this case as they have raised in other cases (Dkt. 272 at PageID 6835–36), and intentionally violated the Court's order requiring disclosure of their prior objections. (*Id.* at PageID 6842–43). Mr. Burress's counsel, Mr. Birner, has apparently decided to join forces with Mr. Weinstein (as evidenced by filing a joint notice of appeal with him and designating Mr. Weinstein to speak for him and his client) and has his own history of wrongful conduct in class action litigation.

Plaintiffs' Response to Objections cited *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("concur[ring] with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients"), and discussed how the *Initial Public Offering* opinion specifically found evidence of

bad faith or vexatious conduct by objectors, and noted that other courts have found three objectors' counsel, ***including Mr. Weinstein***, to be "serial objectors" and forced them to post bonds in order to appeal the approval of a class action settlement. (Dkt. 272 at PageID 6843, citing *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 294.)

Plaintiffs' Response also referenced the *Initial Public Offering* opinion's citation of an unreported decision wherein Mr. Weinstein was ordered to post a bond after he "stated that he would withdraw his objection if Class Counsel made a donation to a charity he selected." *Id*. Even more troubling, according to the sworn declaration of class counsel in Turner, Mr. Weinstein offered to drop the objection only if he was compensated, then, when told that the Rules prohibit undisclosed agreements in class actions, said that he could "work around the rules." (Dkt. 262-5 at ¶ 8.) He then proposed a $125,000 contribution to a specific charity and stated that "his relationship with the charity was such that he would be able to share in the proceeds of the 'contribution.'" (*Id*.) With a record like this, it is not surprising that Mr. Weinstein overtly flaunted the Court's order, perhaps hoping that counsel supporting the settlement would not be able to locate this evidence. Mr. Weinstein attended the fairness hearing and was given a chance to make an argument and defend himself. *He chose not to say a word.*

Objector Neill has no right to appeal. The Court correctly found that "all persons other than objector Burress should be foreclosed from seeking any review of the settlement by appeal or otherwise, due to their non-compliance with the terms of the preliminary approval order." Dkt. 330 at ¶ 22.

However, Burress' counsel Mr. Birner has filed multiple improper and meritless filings in this case, seeking to improperly delay these proceedings, including a "Response" with no motion pending and, after the closing of the briefing schedule, an improper Reply, and a frivolous motion to unseal a document that was already unsealed, as well as filing numerous objections to

3

the settlement that were based on a plain misunderstanding of the settlement's terms. (*See* Dkt. 283, 313, 325, and 326). Not only does Mr. Birner have a history of frivolous litigation in the present case, but he also has a record of improper conduct in previous class litigation. (*See* Dkt. 313 at 4, n.2.)[1] Without question, the combination of Mr. Birner's history (here and in other class litigation) and decision now to tie himself to a notorious professional objector exposes his sole objective here: to extract payments from Plaintiffs' counsel.

Although Objector Burress has the right to appeal the Court's Orders, the Class also has the collateral right to ask for surety that—when the Class seeks redress in the future for its actual out-of-pocket losses due to the delay in distributing settlement proceeds pursuant to this Court's approval Orders—Burress and/or Mr. Birner will have sufficient resources to repay the losses imposed by the Objectors' decision to press forward with these questionable appeals.

Thus, Plaintiffs ask the Court to require bonds in the amount of $77,000, which is far less than Plaintiffs' conservative estimate of the actual costs for which the Objectors will be liable if and when their appeals are unsuccessful. As explained below, the proposed bond amounts include conservative estimates of the likely taxable costs associated with responding to these appeals ($25,000) and the additional administrative costs necessitated by the delay ($52,000).

---

[1] Mr. Birner was reprimanded by an Illinois federal court in a case for improperly filing reply briefs and had his case dismissed due to him having his son commit champerty in order to serve as a class representative in a putative class action. "The Court will allow the reply to stand. However, *the parties have now been warned about the impropriety of inundating the Court with such filings in the future, and the Court expects that the parties will henceforth make their full arguments in their initial pleadings*. Entered by Judge Michael M. Mihm on 11/20/06." *Birner v. General Motors Corp.*, Case No. 06-1148, C.D.Ill., Text Only Order, Docket entry 11/20/2006. In that case, Donald Birner represented his son, Trent Birner, who purchased a claim relating to a Corvette defect *for a dollar* solely in order to serve as class representative. *Birner v. General Motors Corp.*, Case No. 1:06-1148, 2007 WL 269847 at *1 (C.D.Ill. Jan. 26 2007). The court found that the "purchase of a lawsuit is void as a matter of public policy because it is champertous" and granted a motion to dismiss based on Birner's lack of standing. *Id.* at *2–3.

## II.     ARGUMENT

**A.     The Court's Orders Approving the Settlement Are Reviewed Under a "Highly Deferential" Abuse of Discretion Standard**

The District Court has broad discretion in approving a class action settlement as fair, reasonable and adequate, *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011).  In order to succeed on their appeal, the Objectors will need to demonstrate that this Court abused its discretion, meaning that the Court reached erroneous conclusions of law or premised its holding "on a clearly erroneous assessment of the evidence.[2]  The Objectors will be unable to clear these high hurdles.

On the issue of attorneys' fees, Objectors have given notice that they will appeal the Court's order regarding attorneys' fees before the Court has even issued any such order.  The Seventh Circuit reviews attorney fee awards under a "highly deferential" version of the abuse-of-discretion standard, recognizing that the District Court is uniquely well-suited to evaluate an attorney's merit in determining a reasonable fee.  *Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 857 (7th Cir. 2009).  For example, in *Williams*, the Seventh Circuit Court of Appeals affirmed Judge Barker's award of attorneys' fees because she followed the proper methodology, and she was "intimately familiar" with the risks presented by the litigation.  *Williams*, 658 F.3d at 636–37.  Because of this "narrow," "limited review," *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996), and the fact that Objectors are appealing a decision that *has not even been rendered yet*, it is clear these are not good-faith appeals filed to protect absent class members (who will not pay any portion of the attorneys' fees and would not benefit from any reduction in same), but rather an improper maneuver to hold this settlement hostage in the hope

---

[2] *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 615 (7th Cir. 2009); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 654–55 (7th Cir. 2007).

of extracting a nuisance payment of some kind.[3]  And, as explained below, FRAP 7 makes sense in these circumstances by allowing the district court to exercise its discretion to reasonably require objectors to post a bond that will cover the costs of their losing on appeal (thus shifting the burden of litigating an appeal of highly improbable success to the objectors instead of the Class).  *See*, *e.g.*, *Barnes*, 2006 WL 6916834, at *3.

## B.      The Appeals Lack Objective Merit

Not only do the appeals lack objective merit, they are plainly frivolous.  Mr. Neill's appeal lacks merit for the simple reason that he lacks standing to appeal due to his intentional violation of the Court's Order.  (*See* Plaintiffs' Response, Dkt. 272 at 15–17; and Court's Judgment, Dkt. 330 at ¶ 22.)  Even if he did have standing, his objections are similarly meritless as described in Plaintiffs' Response.  (*See* Dkt. 272).  While Mr. Burress does have standing to appeal the denial of his objections, his objections are meritless.  (*See* Plaintiffs' Response, Dkt. 272, incorporated herein by reference).  As pointed out in Plaintiffs' Response, Burress's objections are based primarily on his misunderstanding of the settlement, including his mistaken belief that the Settlement relief applies only to repairs that will be made after the Effective Date, that Class Vehicles that have already passed 6 years or 135,000 miles before the Effective Date will receive no relief, and that repairs must be performed at a Ford dealership to qualify for reimbursement under the Settlement. (Dkt. 259 at 2, 4–6.)

## C.      This Court Has Authority to Impose Bonds on Appeal

The Federal Rules of Appellate Procedure empower a district court to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure

---

[3]  *See, e.g.*, *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.* ("*Uponor*"), No. 11- 2247, 2012 WL 4328370 (D. Minn. Sept. 20, 2012); Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 17 (Fed. Judicial Ctr. 3d ed. 2010) (explaining that courts should "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests"; *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011); *Barnes v. FleetBoston Fnancial Corp.*, Case No. 01-10395-NG, 2006 WL 6916834, at *2 (D.Mass. Aug 22, 2006); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009).

payment of costs on appeal." FED. R. APP. P. 7. This power is not diminished by the filing of a notice of appeal. FRAP 7 specifically allows a *district court* to order a bond after an appeal has been filed. *See, e.g., In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267–68 (3rd Cir. 2005). "Whether to require a cost bond is within the sound discretion of the district court and, because there is no fixed amount for the cost bond, the district court has discretion as to the form and amount of the bond." FRAP 7 advisory committee note (1979 amendment). "In addition, the district court's discretion extends to establishing the deadline for the filing of the cost bond." *Id*. This inherent power includes guarding against the possibility that the class will not be compensated for future costs. *See Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 2003) (Posner, J.) ("No statute or rule, or decision of this Circuit, expressly authorizes a court to require the posting of a bond to secure the payment of costs to a party should he prevail in the case. Nonetheless it seems to us, as it has seemed to the other courts that have addressed the question, that **the power to tax costs implies the ancillary power to take reasonable measures to ensure that the costs will be paid**.") (citations omitted) (emphasis added).

The purpose of an appellate cost bond is "to protect the rights of the appellees." *In re Ins. Brokerage Antitrust Litig.* ("*Ins. Brokerage*"), No. 04-5184, 2007 WL 1963063, at *2 (D.N.J. July 2, 2007) (quoting *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002)). In order to protect the Class from additional costs and delay, "[f]ederal courts have required an appeal bond from appellants . . . as a condition of maintaining objector appeals of class action settlements or attorneys' fee awards." *Id.* (quotation omitted).

**D. The Court Should Require Appeal Bonds to Protect the Class Members and the Settling Parties**

District courts "generally consider the following factors in determining whether an appeal bond is appropriate: (1) the appellant's financial ability to post a bond, (2) the risk of

7

nonpayment of appellee's costs if the appeal is unsuccessful, (3) the merits of the appeal, and (4) bad faith or vexatious conduct on the part of the appellants." *Heekin v. Anthem, Inc*., 2013 WL 752637 at *2. These factors support imposition of an appeal bond in this case.

### 1.     Appellants Have the Financial Ability to Post a Bond

As noted previously, Objector Neill's counsel has a substantial track record as an unscrupulous professional objector. He obviously has the financial resources to file objections in case after case, regardless of the potential financial risk. Appellants bear the burden of showing their inability to sustain the bond. *See In re Currency Conversion*, 2010 WL 53741, at *1; *In re Initial Public Offering Sec. Litig*., 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010). Where there is no clear evidence that the Objectors lack the financial ability to post a substantial bond, this requirement is presumptively satisfied. *See Adsani*, 139 F.3d at 79 ("we find that without any showing of her financial hardship, the [$35,000] bond imposed on Adsani is not an impermissible barrier to appeal . . . ."); *In re AOL Timer Warner, Inc., Sec. & "ERISA " Litig*., No. 02-5575, 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (finding that appellant could not establish the inability to post a bond where it did not submit financial information).

Consideration of this factor weighs in favor of requiring the Objector to post an appeal bond. Class Plaintiffs' request of $77,000 bonds (less than one-third of the $250,000 bond required in *Heekin*) in order to ensure that the appellants will have sufficient resources to make restitution to the parties if their appeal is unsuccessful, is neither unreasonable nor overwhelming. In fact, the amount is very conservative in light of the magnitude of the settlement being delayed. To the extent that the Objectors raise factual issues concerning their ability to procure a bond, Plaintiffs respectfully request the Court's permission to take expedited discovery thereon.

**2.** **There is Significant Risk that the Objectors Will Not Pay Plaintiffs' Costs if the Appeals are Unsuccessful**

An appeal's questionable merit is also highly relevant to the analysis. "The merits of an appeal may be relevant to the risk of nonpayment, in that if the appellant is pursuing a clearly frivolous appeal one might infer that the appellant is abusing the judicial process and thus has no intention of paying any costs taxed on appeal." *Heekin v. Anthem, Inc*., 2013 WL 752637 at *2 (citing *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig*., MDL No. 08-1999, 2010 WL 4630846, at *1 (E.D. Wis. Nov. 2, 2010)). This risk is compounded where, as here, the Objectors have no substantial stake in the settlement amount. Each objector owns a single vehicle and their appeals are delaying a settlement involving hundreds of thousands of vehicles. If it becomes necessary to institute collection proceedings against any of these objectors, the parties will face additional, unnecessary challenges, expense and delay. An appropriate appeal bond would resolve this problem. If the Objectors lose on appeal, the bond will stand ready to compensate the parties (at least in part) for their costs and expenses. If the Objectors win on appeal, the bond will not be accessed.

Here, there is no evidence that the Objectors will pay the substantial costs and expenses that are reasonably likely to arise if and when the appeals fail. Mr. Weinstein, speaking on behalf of both objectors, represented that he and Mr. Birner would only be willing to post a bond for $5,000. (*See* Exhibit A, Declaration of Michael Caddell.) When an appeal is objectively weak on its merits, there is a corresponding increased risk that the unsuccessful objector will fail to pay any costs or expenses that might be assessed. This is another factor weighing in favor of requiring a significant appeal bond.

**3.      The Appeals Are Meritless and Highly Unlikely to Succeed**

The Objectors' Appeals are meritless and thus highly unlikely to succeed. As noted above, the Court's settlement approval and fee orders will be reviewed under the Seventh Circuit's deferential abuse of discretion standard. *See Isby v. Bayh*, 75 F.3d at 1196 (appellate review is limited to abuse of discretion); *Schlacher*, 574 F.3d at 857 ("highly deferential" version of the abuse-of-discretion standard applies to district court rulings regarding fee awards). The Objectors posit no plausible argument that the Court applied the wrong legal standard or abused its discretion. In approving the settlement, the Court weighed all of the written submissions and oral arguments, considered the nature of the claims and defenses asserted, the complexity, length and expense of the litigation, the state of the proceedings, and the benefits provided by the proposed settlement. (Dkt. 330.) In view of the substantial record supporting the approval and the deferential abuse-of-discretion standard the Seventh Circuit will apply on appeal, it is clear that the Objectors' appeals are extraordinarily weak on their merits. This is a factor that the Court may, and should, consider in the context of Rule 7. Under Rule 7, a bond is appropriate when an appeal lacks merit, even if it not deemed "frivolous." *See Crain v. Comm'r of Internal Revenue*, 737 F.2d 1417, 1418 (5th Cir. 1984) (discussing assessment of costs under FRAP 38; "An appeal that lacks merit is not always—or often—frivolous.").

**4.      Evidence of Bad Faith or Vexatious Conduct**

As noted above, Neill's counsel has a serial pattern of objecting to class action settlements. Moreover, bad faith and vexatious conduct are evident from both Objectors' conduct in the present case. Neill and his counsel demonstrated bad faith and vexatious conduct by intentionally violating this Court's order, then filing a notice of appeal despite the Court's ruling that he lacked standing to do so. Both Objectors and their counsel failed to seriously examine the terms of the Settlement and the history of the litigation before filing their objections

as evidenced by their numerous misunderstandings of the Settlement's key provisions. Finally, both Objectors appealed any future award of attorneys' fees without even knowing the amount the Court will award or its rational for such an award. This conduct is the very definition of vexatious. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 11-CV-00742, 2012 WL 404895 at *3 (E.D. Wis. Feb. 7, 2012) *aff'd as modified*, 694 F.3d 827 (7th Cir. 2012) (defining vexatious as "without reasonable or probable cause or excuse; harassing; annoying" and citing Black's Law Dictionary (9th ed.2009)). The Objectors have not helped the Class or the Court. Rather, they have wasted the Court's time and resources by ignoring the terms of the Settlement, the factual and legal record, and asserting unjustified and meritless arguments, simply to harass and annoy counsel in order to leverage a payoff that will benefit only themselves.

## E.    The Court Should Require Appeal Bonds in the Amount of $77,000

Courts often impose substantial bond requirements on objectors appealing from class action approvals because of the low likelihood of success on appeal. After all, such appeals cause class plaintiffs to incur significant additional expenses, which they hope to recover as the prevailing party on appeal. *See, e.g.*, *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908, 2013 WL 752637, (S.D.Ind. Feb. 27, 2013) (ordering two objectors to each post $250,000 bonds, jointly and severally in similar situation to this case).[4]

---

[4] *See also In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) ("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions."); *Barnes*, 2006 WL 6916834, at *1 ("Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. . . . [T]he burden of litigating frivolous appeals [should] shift[] to [the objectors] instead of to the class."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006) (imposing appeal bond on class member who appealed settlement because a delay "in the Claims Administration Process and payment to all Class members" would be "highly detrimental"); *In re Cardizem CD Antitrust Litig.* ("*Cardizem*"), 391 F.3d 812, 818 (6th Cir. 2004) ("pursuit of her objections has the practical effect of prejudicing the other injured parties by increasing transaction costs and delaying disbursement of settlement funds"); *In re NASDAQ Market-Makers Antitrust Litig.* ("*NASDAQ*"), 187 F.R.D. 124, 128 (S.D.N.Y. 1999) ("[The appealing objector]'s repeated attempt to use this class action for his own . . . purposes is improper, and his personal pursuits should not be permitted to delay the administration of a $1.027 billion settlement. [He] must be accountable for the damage caused by his actions. Accordingly, [he] will post a bond to include: (1) costs on appeal; (2)

FRAP 7 empowers a district court to require "a bond or . . . other security in any form and amount necessary to ensure payment of costs on appeal." Costs on appeal" are **not** limited to the "taxable" costs itemized in FRAP 39(e). *See Azizian v. Federated Dept Stores, Inc*., 499 F.3d 950, 953–54 (9th Cir. 2007); *see also* Charles Alan Wright, Arthur S. Miller, Edward H. Cooper & Catherine T. Struve, 16A FEDERAL PRACTICE AND PROCEDURE § 3953, at 582–83 (4th ed. 2008 & Supp. 2012) (recognizing *Azizian* as the majority view); *Walton v. City of Carmel*, No. 05-902, 2008 WL 2397683, at *3 (S.D. Ind. June 10, 2008) (Magistrate Judge Baker noting the Circuit split on this issue). The majority rule follows the reasoning of *Marek v. Chesny*, 473 U.S. 1 (1985), in which the Supreme Court held that the undefined word "costs" in FRAP 68 was broader than the word "costs" as used in FRAP 39. *Id.* at 9 ("the most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority," including attorneys' fees under the proper circumstances). Under the reasoning of the majority of the courts to consider the issue, an appeal bond should reflect all costs a meritless appeal imposes.

### 1. The Appeal Bond Should Include Taxable Costs

The Bondable costs under FRAP 7 include but are not limited to those identified in FRAP 39(e), which provides:

> Costs on Appeal Taxable in the District Court. The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal.

Costs on appeal for which a FRAP 7 bond can be required also include the costs authorized in 28 U.S.C. § 1920 to the extent those costs relate to the appeal. Charles Alan Wright, Arthur S.

---

attorney's fees on appeal; and (3) damages resulting from the delay and/or disruption of settlement administration caused by his appeal.").

Miller, Edward H. Cooper & Catherine T. Struve, 16A FEDERAL PRACTICE AND PROCEDURE § 3953, at 578 (4th ed. 2008 & Supp. 2012). Those itemized costs include:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. Thus, bondable costs under FRAP 7 include, at a minimum, the costs of preparation of and transmission of the record, the costs of obtaining any transcripts necessarily obtained for use in the case, printing costs. District courts that recently imposed appeal bonds in class action cases have concluded that $15,000 and $25,000 are reasonable estimates of such costs (not including counsel fees). *See e.g., See Heekin v. Anthem, Inc*., 2013 WL 752637 at *4 (S.D. Ind. Feb. 27, 2013) ($250,000 bond comprised of $15,000 in taxable costs and $235,000 in administrative costs caused by delay); *Initial Pub. Offering*, 721 F. Supp. 2d at 218 (bond included $25,000 in taxable costs); *Daud v. Gold'n Plump Poultry, Inc.*, No. 06-4013, slip op. at 4 (D. Minn. July 28, 2009) (bond included $25,000 in taxable costs); *Ins. Brokerage*, 2007 WL 1963063 at *2–3 (bonds included $25,000 in taxable costs).

In this case, Plaintiffs seek a bond for $25,000 in taxable costs resulting from the appeal, the amount assessed in three of the four cases cited above. This estimate is based on counsel's experience and the case law cited above. The record on appeal will be extensive, of necessity, because the risk presented and the totality of the work performed in the litigation are relevant evidence supporting the Court's award of attorneys' fees.

2.     **The Appeal Bond Should Include Extra Costs of Settlement Administration**

a.     **The Objectors' Appeals Will Result in Additional Costs of Maintaining the Settlement Website, Toll-Free Number and P.O. Box**

In the absence of an appeal, the distribution of settlement proceeds to Class members would begin promptly after the Court's final approval order becomes final.  *See* Dkt. 236-1 at 15.  Objectors' appeal, however, will prohibit distribution of any settlement proceeds until after the appeal is completely resolved.   This will cause the administration of the Settlement to be extended for the duration of the appeal, which will probably last about two years or more.

This delay will result in increased costs of administration consisting of $2,100 per month for the settlement website, over $50 per month for the toll-free number, and $191 per six-month period for maintaining the P.O. Box.  (*See* Exhibit B, Declaration of Mary Tabin.)  Should the delay caused by the appeal result in an additional two years of these costs, the total additional administrative costs would be $52,364.00.

b.     **The Delay Caused By Objectors' Appeals Will Cost the Class Far More than the Amount of the Bond Sought**

The litigation delay caused by the Objectors will injure the Class far beyond the cost of defending the appeal itself.  The Objectors' appeals will delay final distribution of the settlement for as long as two years, resulting in a cost to the Plaintiff class that could easily exceed $1 million.  The total amount paid to the Class members has been estimated as high as $130 million.  (Dkt. 278-10 at 13–14.)   However, class members must submit claims in order to receive payment from the Settlement, which process cannot begin until all appeals are exhausted.  Obviously, a higher percentage of class members will fail to file claims the longer the appellate process drags on due to natural forgetfulness over time.  Additionally, claims must include proof of eligibility including proof of the Out-of-Pocket Expenses paid by the class members for the eligible repairs.  (Dkt. 236-1 at 13–14.)  As the appeal drags on, more class members will lose, or

become unable to retrieve, their supporting documentation. Even if the delay caused by these meritless appeals only results in a 1% reduction in the settlement payout, this could amount to a reduction in payment to the class of $1.3 million based on the estimated $130 million payout. Additionally, two years of 0.5% interest on $130 million would be $1.3 million. (*See Barnes*, 2006 WL 6916834 at *3, considering 5.15% interest on the settlement amount). Despite these vast amounts of costs that will be caused by the delay, Plaintiffs seek only the comparatively modest amount of $77,000 in bonds from each Objector, less than one-third of the amount ordered in *Heekin*.

The Objectors should be required to jointly and severally post bonds which would cover the costs associated with delays in administration and distribution of this settlement. Objectors should be well aware that their appeals impose such costs on the parties—increasing the amount of administrative costs and *decreasing* the amount of money that will be paid to the class. *Barnes*, 2006 WL 6916834, at *3 (ordering appealing objector to $12.5 million class action settlement to post $645,111.60 bond to cover costs for anticipated one-year delay in distribution to class); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d at 279 (ordering appealing objector to post $61,000 bond for administrative costs that class will suffer as a result of delay in distribution from class action settlement).

### III.    CONCLUSION

For the reasons stated herein, the Court should order both of the Objectors to post appeal bonds, jointly and severally, in the amount of $77,000 for the direct taxable costs of the appeal and the administrative costs of the delay caused by the appeal, and file within 10 days of the Court's order proof that they have secured the bonds directed by the Court's order.

Dated: July 29, 2013     Respectfully submitted,


        By: /s/ Michael A. Caddell
          Michael A. Caddell
          Cynthia B. Chapman
          Cory S. Fein
          Caddell & Chapman
          1331 Lamar, Suite 1070
          Houston TX 77010-3027
          Telephone: (713) 751-0400
          Facsimile: (713) 751-0906

          **MDL LEAD COUNSEL FOR PLAINTIFFS**


### CERTIFICATE OF CONFERENCE

   I hereby certify that I conferred with counsel for Ford Motor Co,, and Ford is not opposed to this motion. I also conferred with Mr. Weinstein (who represented that he was speaking on behalf of himself, his client, Mr. Birner, and Mr. Birner's client). Mr. Weinstein represented that Objectors opposed this motion and would agree to post a bond for only $5,000.


          /s/ Michael A. Caddell
          Michael A. Caddell


### CERTIFICATE OF SERVICE

   I hereby certify that, on July 29, 2013, this document was filed electronically via the Court's ECF system and thereby served on all counsel of record.


          /s/ Cory Fein
          Cory Fein